**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---------------------------------------------------------------
DAWN GIOVANNOLI             :
1687 Mill Creek Rd          :
Manahawkin, NJ 08050        :
                            :
          Plaintiff,  :
                            :  Civil Action No.: _____
  v.                       :
                            :  **JURY TRIAL DEMANDED**
PROGENYHEALTH, LLC          :
450 Plymouth Road, Suite 200 :
Plymouth Meeting, PA 19462  :
                            :
          Defendant.  :
---------------------------------------------------------------

## COMPLAINT

Plaintiff, Dawn Giovannoli ("Plaintiff"), hereby brings this action against Defendant ProgenyHealth, LLC ("Defendant"), and alleges, upon personal knowledge as to her own acts, and upon information and belief as to the acts of others, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action contending Defendant violated her rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, by discriminating against her, permitting the existence of a hostile work environment, causing her to lose pay and benefits, and ultimately causing her constructive discharge on the basis of her disability, in retaliation for her attempts to exercise her rights under the ADA, PHRA and FMLA, in retaliation for her complaints about discrimination and a hostile work environment. As a result, Plaintiff has suffered damages as set forth herein.

2. Additionally, Plaintiff brings this Complaint contending that Defendant failed to pay compensation pursuant to the parties' agreement and the requirements of the Pennsylvania

Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1 *et seq.*, as well as under the doctrines of promissory estoppel and unjust enrichment.

## PARTIES

3. Plaintiff Dawn Giovannoli is a citizen of the United States and State of New Jersey, and currently resides at 1687 Mill Creek Rd. Manahawkin, NJ 08050.

4. Upon information and belief, Defendant ProgenyHealth, LLC, is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania, with a corporate headquarters located within the Commonwealth of Pennsylvania at 450 Plymouth Road, Suite 200, Plymouth Meeting, PA 19462.

5. At all times relevant hereto, Defendant acted or failed to act through its agents, servants, and/or employees thereto existing, each of whom acted at all times relevant hereto in the course and scope of their employment with and for Defendant.

## JURISDICTION AND VENUE

6. On or about February 11, 2020, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e), and 43 P.S. § 959(a). Plaintiff's EEOC Charge was docketed as EEOC Charge No. 530-2020-02756. Plaintiff's EEOC Charge was filed within one hundred and eighty (180) days of the unlawful employment practice.

7. By correspondence dated August 17, 2020, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge, advising Plaintiff had ninety (90) days to file suit against Defendant.

8. Plaintiff filed the instant action within the statutory time frame applicable to her claims.

9. Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintain this action.

10. This is an action authorized and instituted pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq.* and Pennsylvania common law.

11. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

12. This Court has pendant jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims arise out of the same common nucleus of operative fact as her federal claims.

13. Personal jurisdiction over Defendant exists in the Commonwealth of Pennsylvania as Defendant is headquartered within the Commonwealth of Pennsylvania in Newtown Square, Pennsylvania, and conducts business throughout the Commonwealth of Pennsylvania.

14. The Venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as the Defendant resides in this judicial district, doing business herein, and a substantial part of the unlawful practices of which Plaintiff is complaining were committed in the Commonwealth of Pennsylvania and in this judicial district.

## FACTUAL BACKGROUND

15. The preceding paragraphs are hereby incorporated by reference as though the same were fully set forth at length herein.

16. On or about October 31, 2017, Defendant hired Plaintiff in the position of Director of Strategic Accounts ("DSA").

17. During her tenure, Plaintiff performed her job well, and, prior to February 2019, received positive feedback concerning her performance and no discipline.

18. As part of Plaintiff's compensation, and as an intentional inducement to employment, Plaintiff was promised sales commissions in addition to her salary.

19. Among other things, for new clients obtained by Plaintiff, Plaintiff was specifically promised the following: (1) four percent (4%) of collected revenue up to $4,000,000, (2) five percent (5%) of collected revenue between $4,000,000 and $7,000,000, and (3) a higher, discretionary percentage of collected revenue above $7,000,000.

20. In reliance on the promise of these commissions, Plaintiff pursued, cultivated and developed for Defendant new clients including HealthNow, Community Health Plan of Washington ("CHPW") and Molina.

21. Pursuant to the Defendant's promised sales commissions, Defendant was obligated to pay Plaintiff four percent (4%) of revenue for new clients HealthNow and CHPW.

22. Defendant was further obligated to pay Plaintiff a percentage above five percent (5%) of revenue for new client Molina.

23. On or about February 15, 2019, Plaintiff was diagnosed with a serious medical condition, ventricular tachycardia, and rushed to the hospital.

24. Over the course of the next six months, Plaintiff continued to be treated for her condition.

25. Plaintiff's ventricular tachycardia is a disability within the meaning of the ADA/PHRA in that it substantially impairs her major life activities, including, but not limited to, lifting, breathing, concentrating and the general function of her circulatory system.

26. As a result of the foregoing, Plaintiff necessitated a medical leave of absence under the Family and Medical Leave Act ("FMLA").

27. Plaintiff's medical leave of absence began on or about March 11, 2019, and she was initially scheduled to return in or around June 22, 2019.

28. Thereafter, Plaintiff requested and was granted leave based on her doctor's instructions until she was cleared to return to work.

29. However, throughout her leave and return to work until her constructive discharge on or about September 30, 2019, Plaintiff was the subject of continuous harassment and differential treatment on the basis of her disability.

30. In or about May 2019, Defendant posted Plaintiff's job online, and, on or about June 5, 2019, Defendant hired a new DSA who was subsequently assigned most of Plaintiff's accounts.

31. In or about mid-July 2019, Defendant retroactively, and without any qualifying event, warning, or notice to Plaintiff terminated Plaintiff's health benefits, effective July 1, 2019.

32. On or about July 30, 2019, the CHPW account was reassigned to another less-tenured DSA.

33. Plaintiff had independently cultivated the CPHW account from scratch with the CEO of CHPW, and this account had been very quickly moving towards close prior to Plaintiff's leave.

34. The CHPW account remained wrongfully withheld from Plaintiff (and was in fact permanently withheld).

35. On or about August 5, 2019, Plaintiff notified Defendant that she was cleared to return to work.

36. That same day, August 5, 2019, after being notified of Plaintiff's imminent return to work, Dan Feruck ("Mr. Feruck"), Plaintiff's supervisor and Chief Revenue Officer, wrote up an outrageously false and misleadingly negative Annual Performance Review ("APR") for Plaintiff. Notably, the APR was supposed to have been completed by March 31, 2019.

37. On or about August 9, 2020, Mr. Feruck then told Plaintiff for the first time that her performance was "not meeting expectations" per his APR created "while you were on leave." Mr. Feruck further stated that Plaintiff would be given a choice between a 30-day Performance Improvement Plan ("PIP") or a Separation Agreement for one (1) month of salary plus a one percent (1%) commission (rather than the promised four percent (4%) commission) on a single account (HealthNow) that closed during Plaintiff's leave.

38. Approximately eighty-two percent (82%) of the business in Defendant's pipeline prior to Plaintiff's leave was due to Plaintiff's efforts and origination.

39. Also on or about August 9, 2019, Mr. Feruck forwarded his APR to Plaintiff. In contrast to Plaintiff's comprehensive self-review and the Defendant's requirement of "detailed examples" for each rating, Mr. Feruck's comments were brief, vague and unsupported.

40. Subsequently, on the basis of Mr. Feruck's mendacious review, Plaintiff was issued a purposely unattainable 30-day Performance Improvement Plan ("PIP"), which contained performance metrics that did not previously exist for DSAs.

41. Plaintiff returned to work and asked that the Annual Review be corrected and PIP withdrawn, but Defendant refused to do so.

42. On or about August 30, 2019, Plaintiff provided Mr. Feruck with 9 pages of specifics of performance which rebutted all of the falsehoods of his APR and PIP as well as stating that the timing of the APR and PIP and their wholly inaccurate and misleading content led Plaintiff to believe that she was being targeted for her medical condition/disability and use of medical leave. Plaintiff further stated that she believed the retaliatory PIP needed to be fully withdrawn and her APR corrected for her HR file to reflect only the facts.  Defendant refused to do so and refused to provide the requested proof of all the false accusations.

43. Plaintiff's disability causes symptoms that are exacerbated by stress.

44. Throughout his interactions with Plaintiff, Mr. Feruck became increasingly verbally abusive, stonewalling and bullying, causing Plaintiff undue stress unrelated to the performance of the essential functions of her job.

45. For example, during a call in early September 2019, when Plaintiff complained to Mr. Feruck that he was bullying her, asked him to stop bullying her and reminded him of her heart condition, he began fully shouting at her.

46. Plaintiff's requests for and use of temporary leave was a reasonable accommodation within the meaning of the ADA insofar as it permitted Plaintiff to perform the essential functions of her job after a brief period of treatment and did not place an undue burden upon Defendant.

47. Plaintiff's requests for the cessation of Mr. Feruck's bullying and harassment was a reasonable accommodation within the meaning of the ADA insofar as it permitted Plaintiff to perform the essential functions of her job and did not place an undue burden upon Defendant.

48. On or about September 12, 2019, still under the care of her cardiac physician at Penn Medicine, Plaintiff was placed back on a remote cardiac monitor because of the stress caused by Mr. Feruck and Defendant.

49. Accordingly, in conjunction with the PIP, Mr. Feruck's behavior repeatedly put Plaintiff's health at risk. By September 30, 2019, conditions at work became unbearable.

50. On or about September 30, 2019, Plaintiff was constructively discharged, because Defendant permitted the existence of a hostile work environment because of Plaintiff's disability, effectively refusing to accommodate her disability by punishing any use of leave, and implicitly sanctioning the behavior that caused Plaintiff's health to be at risk.

51. Plaintiff believes and therefore avers that she was constructively discharged from Defendant on account of her disability, and/or in retaliation for her requests for accommodation in connection thereto.

52. Plaintiff further believes and avers that she was subjected to a hostile work environment because of her disability, which was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment.

53. At the time of her constructive discharge, Plaintiff was qualified for her position.

54. Upon information and belief, at the time of her constructive discharge, Defendant had a continuing need for the job duties and responsibilities previously performed by Plaintiff.

55. At the time of her constructive discharge, Plaintiff would have been entitled to leave under the FMLA for her disabilities.

56. Defendant willfully violated the provisions of the FMLA by constructively terminating Plaintiff's employment after Plaintiff returned from medical leave.

57. Defendant also failed to pay Plaintiff in accordance with the parties' agreement, Defendant's Sales Commission Plan, and/or the promises made by Defendant to Plaintiff regarding compensation.

58. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion, benefits, earnings and earnings potential, loss of potential benefits, and other economic damages, and also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to reputation.

## COUNT I
## AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. § 12101, *et seq.*
## HOSTILE WORK ENVIRONMENT, DISCRIMINATION, RETALIATION AND FAILURE TO ACCOMMODATE

59. The preceding paragraphs are hereby incorporated by reference as though the same were fully set forth at length herein.

60. At all times relevant hereto, Plaintiff was an employee of Defendant within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.

61. Pursuant to the ADA, Plaintiff is a qualified individual with one or more disabilities.

62. Plaintiff's ventricular tachycardia constitutes a disability within the meaning of the ADA in that it substantially impairs her ability to engage in major life activities, such as lifting, breathing, concentrating and the general function of her circulatory system.

63. Defendant was aware of Plaintiff's disability and regarded Plaintiff as being disabled.

64. Despite her disability, Plaintiff would have been able to perform the essential functions of her job with or without a reasonable accommodation, including, but not limited to, cessation of Mr. Feruck's bullying and harassment, working remotely, and medical leaves of absence.

65. Defendant subjected Plaintiff to or otherwise permitted the existence of a hostile work environment because of her disability in violation of the ADA.

66. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

67. By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the ADA by failing to engage in the interactive process of determining a reasonable accommodation for Plaintiff, depriving her of pay and benefits, and ultimately constructively terminating Plaintiff's employment on the basis of her actual and/or perceived disabilities, past record of impairment, such disabilities Defendant regarded Plaintiff as having, in retaliation for Plaintiff's requests for reasonable accommodations in connection thereto, and in retaliation for Plaintiff's complaints of disability discrimination and hostile work environment.

68. It is further alleged that, by reasons of the foregoing, Defendant unlawfully failed to provide reasonable accommodations for Plaintiff's disability.

69. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Punitive and/or compensatory damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C. Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as is just and equitable under the circumstances.

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## COUNT II
## PENNSYLVANIA HUMAN RELATIONS ACT
## 43 P.S. § 951, *et seq.*
## HOSTILE WORK ENVIRONMENT, DISCRIMINATION AND RETALIATION

70. The preceding paragraphs are hereby incorporated by reference as though the same were fully set forth at length herein.

71. Plaintiff is a qualified individual with disabilities within the meaning of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, due to her ventricular tachycardia, which substantially limits Plaintiff's ability to perform major life activities such as lifting, breathing, concentrating, and the general function of her circulatory system.

72. Plaintiff was/is able to perform the essential functions of her job with or without a reasonable accommodation.

73. Defendant subjected Plaintiff to or otherwise permitted the existence of a hostile work environment because of her disability in violation of the PHRA.

74. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

75. By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the PHRA by failing to engage in the interactive process of determining a reasonable accommodation for Plaintiff, depriving her of pay and benefits, and ultimately constructively terminating Plaintiff's employment on the basis of her actual and/or perceived disabilities, past record of impairment, such disabilities Defendant regarded Plaintiff as having, in retaliation for Plaintiff's requests for reasonable accommodations in connection thereto, and in retaliation for Plaintiff's complaints of disability discrimination and hostile work environment.

76. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

77. The conduct described above constitutes a violation of the PHRA and affords Plaintiff the opportunity to seek any and all remedies available under said Act.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Compensatory damages in an amount to be determined at trial;

C. Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as is just and equitable under the circumstances.

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages a set forth by federal law.

## COUNT III
## THE FAMILY AND MEDICAL LEAVE ACT
## 29 U.S.C. § 2601, *et seq.*
## **RETALIATION**

78. The preceding paragraphs are hereby incorporated by reference as though the same were fully set forth at length herein.

79. Defendant employed at least fifty (50) employees at its various office locations within the applicable seventy-five (75) mile radius of Plaintiff's worksite for each working day in each of twenty (20) or more calendar days in the current or preceding year.

80. Plaintiff was an eligible employee under the FMLA and entitled up to twelve (12) weeks of unpaid leave for her serious health condition.

81. Plaintiff provided adequate notice to Defendant of her need for medical leave by giving notice as soon as she became aware of the need for leave and as soon as was practicable, pursuant to 29 U.S.C. § 2612(e).

82. Defendant willfully violated the FMLA by reducing and/or eliminating Plaintiff's compensation and benefits, and ultimately constructively terminating Plaintiff in retaliation for taking leave under the FMLA.

83. The aforementioned actions of Defendant constitute retaliation under the FMLA.

84. As a result of Defendant's actions, Plaintiff has suffered significant damages.

85. Plaintiff has, because of Defendant's constructive termination of Plaintiff's employment, suffered loss of employment, promotion benefits, earnings and earnings potential, other significant benefits, emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00):

B. Liquidated damages;

C. Plaintiff's costs, disbursements and attorneys' fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as is just and equitable under the circumstances.

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## COUNT IV
## PENNSYLVANIA COMMON LAW
## BREACH OF CONTRACT

86. Plaintiff incorporates herein by reference the preceding paragraphs as though the same were more fully set forth at length herein.

87. Defendant entered into an agreement with Plaintiff whereby she would seek out, cultivate and develop new clients for the benefit of Defendant in exchange for both salary and commissions.

88. Plaintiff did in fact seek out, cultivate and develop new clients for Defendant's benefit.

89. However, Defendant did not pay Plaintiff the commissions owed pursuant to the parties' agreement.

90. As a result of Defendant's unlawful acts, Plaintiff has been deprived of compensation in amounts to be determined at trial, and is entitled to recovery of such amounts.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and grant the maximum relief allowed by law, including, but not limited to:

A. An award to Plaintiff for the amount of unpaid compensation to which she is entitled, including interest thereon, and penalties subject to proof; and

B. An award to Plaintiff for any other damages available to her under applicable Pennsylvania law, including general and special damages according to proof, and all such other relief as this Court may deem proper.

## COUNT V
## PENNSYLVANIA COMMON LAW
## **PROMISSORY ESTOPPEL**

91. Plaintiff incorporates herein by reference the preceding paragraphs as though the same were more fully set forth at length herein.

92. Defendant promised to Plaintiff that for all new clients obtained by Plaintiff, she would be paid, in addition to her salary: (1) four percent (4%) of collected revenue up to $4,000,000, (2) five percent (5%) of collected revenue between $4,000,000 and $7,000,000, and (3) a higher, discretionary percentage of collected revenue above $7,000,000.

93. Defendant reasonably expected that said promise would induce Plaintiff to employment with Defendant, to forbear other employment, and to pursue, cultivate, and develop new clients for Defendant.

94. Defendant's promise did actually induce Plaintiff to employment with Defendant, to forbearance of other employment, and to the pursuit, cultivation and development for Defendant of new clients including HealthNow, CHPW, and Molina.

95. However, Defendant did not pay Plaintiff the commissions pursuant to Defendant's promise.

96. Injustice can only be avoided by enforcing Defendant's promise.

97. As a result of Defendant's unlawful acts, Plaintiff has been deprived of compensation in amounts to be determined at trial, and is entitled to recovery of such amounts.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and grant the maximum relief allowed by law, including, but not limited to:

A. An award to Plaintiff for the amount of unpaid compensation to which she is entitled, including interest thereon, and penalties subject to proof; and

B. An award to Plaintiff for any other damages available to her under applicable Pennsylvania law, including general and special damages according to proof, and all such other relief as this Court may deem proper.

### COUNT VI
### PENNSYLVANIA COMMON LAW
### UNJUST ENRICHMENT

98. Plaintiff incorporates herein by reference the preceding paragraphs as though the same were more fully set forth at length herein.

99. Plaintiff conferred benefits on Defendant by cultivating and securing relationships with new clients HealthNow, CPHW and Molina.

100. Defendant appreciated and realized the benefits conferred on it by Plaintiff.

101. Under the circumstances, acceptance and retention by Defendant of the benefits would make it inequitable for the defendant to retain the benefit without paying for the value of the benefit.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and grant the maximum relief allowed by law, including, but not limited to:

A. An award to Plaintiff for the amount of unpaid compensation to which she is entitled, including interest thereon, and penalties subject to proof;

B. An award to Plaintiff for any other damages available to her under applicable Pennsylvania law, including general and special damages according to proof, and all such other relief as this Court may deem proper.

## COUNT VII
## PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW
## 43 P.S. § 260.1, *et seq.*
## FAILURE TO PAY WAGES DUE AND OWING

102. Plaintiff incorporates herein by reference the preceding paragraphs as though the same were more fully set forth at length herein.

103. By its actions alleged above, Defendant has violated the provisions of the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq.*, by failing to pay certain wages and benefits earned, due and owing to Plaintiff pursuant to Defendants' policies, practices and agreements with Plaintiff.

104. Defendant has also violated the WPCL by failing to compensate Plaintiff for the commissions owed to Plaintiff pursuant to the parties' agreement and Sales Commission Plan.

105. Plaintiff is entitled to compensation for hours of work which she performed for Defendants and for which she was not properly compensated.

106. As a result of Defendant's unlawful acts, Plaintiff has been deprived of compensation in amounts to be determined at trial, and is entitled to recovery of such amounts, and liquidated damages, together with costs and attorney's fees pursuant to the WPCL.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and grant the maximum relief allowed by law, including, but not limited to:

A. An award to Plaintiff for the amount of unpaid compensation to which she is entitled, including interest thereon, and penalties subject to proof;

B. An award to Plaintiff of liquidated damages in an amount equal to twenty-five percent (25%) of the total amount of wages and benefits due pursuant to the Wage Payment and Collection Law, 43 P.S. §260.10;

C. An award to Plaintiff of reasonable attorney's fees and costs pursuant to the Wage Payment and Collection Law, 43 P.S. §260.10; and

D. An award to Plaintiff for any other damages available to her under applicable Pennsylvania law, including general and special damages according to proof, and all such other relief as this Court may deem proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By: */s/ Michael Murphy*
Michael Murphy, Esq.
Morgan J. Zucker, Esq.
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-0210
murphy@phillyemploymentlawyer.com
mzucker@phillyemploymentlawyer.com
*Attorney for Plaintiff*

Dated: October 9, 2020

## **DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's potential claims and her claims to damages, to any defenses to same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.